**UNITED STATES DISTRICT COURT**
**DISTRICT OF DELAWARE**

---------------------------------------------------------

SHIVA STEIN,                                         :
                                                     :
          Plaintiff,                          :   Civil Action No. _____
                                                     :
v.                                                   :   **COMPLAINT FOR VIOLATIONS OF**
                                                     :   **SECTIONS 14(a) AND 20(a) OF THE**
CARRIZO OIL & GAS, INC., THOMAS L.                   :   **SECURITIES EXCHANGE ACT OF**
CARTER, JR., ROBERT F. FULTON, S.P.                  :   **1934**
JOHNSON, F. GARDNER PARKER,                          :
ROGER A. RAMSEY, FRANCES ALDRICH                     :   **JURY TRIAL DEMANDED**
SEVILLA-SACASA, STEVEN A.                            :
WEBSTER, FRANK A. WOJTEK, and                        :
CALLON PETROLEUM COMPANY,                            :
                                                     :
          Defendants.                        :

---------------------------------------------------------

Shiva Stein ("Plaintiff"), by and through her attorneys, alleges the following upon information and belief, including investigation of counsel and review of publicly-available information, except as to those allegations pertaining to Plaintiff, which are alleged upon personal knowledge:

1.      This is an action brought by Plaintiff against Carrizo Oil & Gas, Inc. ("Carrizo or the "Company") and the members of Carrizo's board of directors (the "Board" or the "Individual Defendants" and collectively with the Company, the "Defendants") for their violations of Section 14(a) and 20(a) of the Securities Exchange Act of 1934 (the "Exchange Act"), 15 U.S.C. §§ 78n(a), 78t(a),  and SEC Rule 14a-9, 17 C.F.R. 240.14a-9 and 17 C.F.R. § 244.100, in connection with the proposed merger between Carrizo and Callon Petroleum Company ("Callon").

2.      Defendants have violated the above-referenced Sections of the Exchange Act by causing a materially incomplete and misleading Registration Statement on Form S-4 (the "Registration Statement") to be filed on August 20, 2019 with the United States Securities and

Exchange Commission ("SEC") and disseminated to Company stockholders.  The Registration Statement recommends that Company stockholders vote in favor of a proposed transaction whereby Callon and Carrizo will merge, resulting with Callon surviving the merger (the "Proposed Transaction"). Pursuant to the terms of the definitive agreement and plan of merger the companies entered into (the "Merger Agreement"), each Carrizo common share issued and outstanding will be converted into the right to receive 2.05 shares of Callon common stock (the "Merger Consideration").

3.      As discussed below, Defendants have asked Carrizo's stockholders to support the Proposed Transaction based upon the materially incomplete and misleading representations and information contained in the Registration Statement, in violation of Sections 14(a) and 20(a) of the Exchange Act.  Specifically, the Registration Statement contains materially incomplete and misleading information concerning the financial projections that were prepared by the Company and relied upon by the Board in recommending the Company's stockholders vote in favor of the Proposed Transaction.  The financial projections were also utilized by the financial advisor of Callon, J.P. Morgan Securities LLC ("J.P. Morgan"), and the financial advisors of the Company, RBC Capital Markets, LLC ("RBC") and Lazard Frères & Co. LLC ("Lazard"), in conducting the valuation analyses in support of the fairness opinion.

4.      It is imperative that the material information that has been omitted from the Registration Statement is disclosed to the Company's stockholders prior to the forthcoming stockholder vote so that they can properly exercise their corporate suffrage rights.

5.      For these reasons and as set forth in detail herein, Plaintiff seeks to enjoin Defendants from taking any steps to consummate the Proposed Transaction unless and until the material information discussed below is disclosed to Carrizo's stockholders or, in the event the

Proposed Transaction is consummated, to recover damages resulting from the Defendants' violations of the Exchange Act.

## JURISDICTION AND VENUE

6.      This Court has subject matter jurisdiction pursuant to Section 27 of the Exchange Act (15 U.S.C. § 78aa) and 28 U.S.C. § 1331 (federal question jurisdiction) as Plaintiff alleges violations of Section 14(a) and 20(a) of the Exchange Act and SEC Rule 14a-9.

7.      Personal jurisdiction exists over each Defendant either because the Defendant conducts business in or maintains operations in this District, or is an individual who is either present in this District for jurisdictional purposes or has sufficient minimum contacts with this District as to render the exercise of jurisdiction over defendant by this Court permissible under traditional notions of fair play and substantial justice.

8.      Venue is proper in this District under Section 27 of the Exchange Act, 15 U.S.C. § 78aa, as well as under 28 U.S.C. § 1391, because Callon is incorporated in this District.

## PARTIES

9.      Plaintiff is, and has been at all relevant times, the owner of Carrizo common stock and has held such stock since prior to the wrongs complained of herein.

10.     Individual Defendant Thomas L. Carter, Jr. has served as a member of the Board since 2005.

11.     Individual Defendant Robert F. Fulton has served as a member of the Board since 2012.

12.     Individual Defendant S.P. Johnson ("Johnson") has served as a member of the Board since 1993. Johnson is also the Company's President and Chief Executive Officer ("CEO").

13.     Individual Defendant F. Gardner Parker has served as a member of the Board since 2000.

14.     Individual Defendant Roger A. Ramsey has served as a member of the Board since 2004.

15.     Individual Defendant Frances Aldrich Sevilla-Sacasa has served as a member of the Board since 2018.

16.     Individual Defendant Steven A. Webster has served as a member of the Board since 1993 and is currently the Chairman of the Board.

17.     Individual Defendant Frank A. Wojtek has served as a member of the Board since 1993.

18.     Defendant Carrizo is incorporated in Texas and maintains its principal offices at 500 Dallas Street, Suite 2300, Houston, Texas 77002.  The Company's common stock trades on the NASDAQ Stock Exchange under the symbol "CRZO."

19.     Defendant Callon is incorporated in Delaware and maintains its principal offices at 2000 W. Sam Houston Parkway S., Suite 2000, Houston, Texas 77042. The Company's common stock trades on the New York Stock Exchange under the symbol "CPE."

20.     The defendants identified in paragraphs 10-17 are collectively referred to as the "Individual Defendants" or the "Board."

21.     The defendants identified in paragraphs 10-19 are collectively referred to as the "Defendants."

## SUBSTANTIVE ALLEGATIONS

A.     **The Proposed Transaction**

22.     Carrizo, incorporated on September 24, 1993, is an energy company. The Company is engaged in the exploration, development and production of oil and gas from resource plays located in the United States. Its operations are focused in proven, producing oil and gas plays in the Eagle Ford Shale in South Texas, the Delaware Basin in West Texas, the Utica Shale in Ohio,

4

the Niobrara Formation in Colorado, and the Marcellus Shale in Pennsylvania. As of December 31, 2016, the Company's proved reserves of 200 million barrels of oil equivalent (MMBoe) were 64% crude oil, 12% natural gas liquids (NGLs) and 24% natural gas. It operated approximately 94% of the wells in Eagle Ford in which it held an interest. It held an average interest of approximately 85% in these operated wells. It owned leases covering approximately 309,200 gross (179,179 net) acres in the Eagle Ford, Niobrara, Utica and the Delaware Basin areas.

23.     On July 15, 2019, the Company and Callon jointly announced the Proposed Transaction:

> HOUSTON, July 15, 2019 /PRNewswire/ -- Callon Petroleum Company (NYSE: CPE) and Carrizo Oil & Gas, Inc. (Nasdaq: CRZO) today announced that their Boards of Directors have unanimously approved a definitive agreement under which Callon will acquire Carrizo in an all-stock transaction valued at $3.2 billion. This highly complementary combination will create a leading oil and gas company with scaled development operations across a portfolio of core oil-weighted assets in both the Permian Basin and Eagle Ford Shale.
>
> Under the terms of the agreement, Carrizo shareholders will receive a fixed exchange ratio of 2.05 Callon shares for each share of Carrizo common stock they own. This represents $13.12 per Carrizo share based on Callon's closing common stock price on July 12 and a premium of 18% to Carrizo's trailing 60-day volume weighted average price. Following the close of the transaction, Callon shareholders will own approximately 54% of the combined company, and Carrizo shareholders will own approximately 46%, on a fully diluted basis. The all-stock transaction is intended to be tax-free to Carrizo shareholders.
>
> * * *
>
> **Strategic and Financial Benefits of the Transaction**
> - Increases Corporate and Delaware Basin Scale: On a pro forma basis, Callon will have an approximate 200,000 net acre footprint in the Permian Basin and Eagle Ford Shale, including over 90,000 net acres in the DelawareBasin, and approximately 2,500 total gross horizontal drilling locations. The companies produced a combined 102.3 MBoe/d in 1Q19

(71% oil) and generated pro forma LTM 1Q19 adjusted EBITDAX of $1.2 billion. With an expected total of 9 to 10 drilling rigs and 3 to 4 completion crews working during the course of 2020, predominantly in the Permian Basin, the combined entity will have the critical mass to realize supply chain savings and sustain simultaneous operations initiatives.

- Expands Portfolio of Complementary High-Quality Assets: Together with Carrizo, Callon will be a premier Texasoperator with an extensive inventory of core Permian and Eagle Ford locations that compete for capital on a full-cycle basis. As a portfolio, our increased level of large project initiatives in the Permian Basin will be balanced by sustained investment in shorter cycle and less capital-intensive projects in the Eagle Ford Shale. Based on initial plans for capital allocation within the combined portfolio, Callon forecasts its free cash flow breakeven WTI crude oil price to progress to under $50/Bbl by 2021.

- Accelerates Free Cash Flow Generation: Callon expects this combination to be immediately accretive to free cash flow per share in 2020 with positive free cash flow generation of over $100 million at current strip pricing1 while maintaining double-digit production growth. The combination brings together a well-established and repeatable free cash flow generating business in the Eagle Ford Shale with Permian Basin assets that are rapidly transitioning to positive net cash flows with increasing investment in high-return projects. In addition, the combined company's corporate free cash flow will be increased through an optimized development plan in addition to corporate cost savings. This sustained free cash flow generation will accelerate Callon's deleveraging initiatives and improve its capacity to return capital to shareholders in the future.

- Maintains Callon's Financial Strength and Flexibility: Callon expects to have an enhanced credit profile due to broader scale and scope, and a substantial base of oil-weighted proved developed producing reserves. Importantly, significant free cash flow generation will drive the combined company's leverage ratio to below 2.0x in 2020 at current strip pricing. Additionally, upon closing, the combined company is anticipated to have pro forma liquidity of more than $1 billion under a new underwritten credit facility combined with no near-term debt maturities.

- Drives Substantial Identified Synergies: The combination is expected to generate a total of $850 million in net present value from the following categories of primary synergies:
  - Annual run-rate operational synergies of $65 to $80 million attributed to a structural shift in the combined program development model, consisting of:
    - Expanded large scale development in the Permian Basin, deploying simultaneous drilling and completion operations, improving production cycle times and reducing well costs;
    - Optimized, integrated development schedule to capture efficiencies from continuous utilization of dedicated completion crews; and
    - Improved uptime from concentrated development, resulting in reduced production downtime from offsetting completion operations.
  - Estimated annual cash general and administrative savings of $35 million to $45 million.
  - Optimized capital allocation initiatives, including a mix of shorter and longer cycle projects, select activity acceleration within a larger cash flow base and high-grading of drilling inventories.

In addition, Callon has identified further synergies that are anticipated to be realized over time:
  - Integration of Delaware infrastructure and water management, expanding the opportunity for water recycling programs and increasing scale for potential monetization structures;
  - Larger portfolio of non-core acreage for divestment and trades, high-grading overall returns on capital;
  - Increased hydrocarbon volumes provide critical mass for marketing arrangements and ongoing initiatives to control critical parts of the value chain, including firm transportation on pipelines; and
  - Cost of capital reductions, including opportunistic debt refinancings.

**Governance and Leadership**
The transaction has been unanimously approved by the Boards of Directors at both Callon and Carrizo.  In addition, each of the

Carrizo directors has committed to vote his or her shares in favor of the transaction.

Upon closing, the Board of Directors of the combined company will consist of 11 members, including Callon's eight current Board members and three to be appointed from the Board of Carrizo. The combined company will be led by Callon's executive management team and will remain headquartered in Houston, Texas.

**Timing and Approvals**
The transaction, which is expected to close during the fourth quarter of 2019, is subject to customary closing conditions and regulatory approvals, including the approval of shareholders of both companies.

\* \* \*

24.     The Board has unanimously agreed to Proposed Transaction.  It is therefore imperative that Carrizo's stockholders are provided with the material information that has been omitted from the Registration Statement, so that they can meaningfully assess whether or not the Proposed Transaction is in their best interests prior to the forthcoming stockholder vote.

B.     **The Materially Incomplete and Misleading Registration Statement**

25.     On August 20, 2019, Carrizo and Callon jointly filed the Registration Statement with the SEC in connection with the Proposed Transaction.  The Registration Statement was furnished to the Company's stockholders and solicits the stockholders to vote in favor of the Proposed Transaction.  The Individual Defendants were obligated to carefully review the Registration Statement before it was filed with the SEC and disseminated to the Company's stockholders to ensure that it did not contain any material misrepresentations or omissions. However, the Registration Statement misrepresents and/or omits material information that is necessary for the Company's stockholders to make an informed decision concerning whether to vote in favor of the Proposed Transaction, in violation of Sections 14(a) and 20(a) of the Exchange Act.

26.     With respect to the financial projections disclosed in the Registration Statement, the Registration Statement fails to provide material information.

27.     For the *Summary of Certain Callon Unaudited Prospective Financial and Operating Information* based on (1) New York Mercantile Exchange oil and gas strip pricing and (2) Wall Street consensus pricing, the Registration Statement provides values for non-GAAP (Generally Accepted Accounting Principles) financial metrics such as (1) Adjusted EBITDAX and (2) Adjusted operating cash flow, but fails to provide: (i) the line items used to calculate the non-GAAP measures, or (ii) a reconciliation of these non-GAAP metrics to their most comparable GAAP measures, in direct violation of Regulation G and consequently Section 14(a). Registration Statement at 95.

28.     For the *Callon Management Projections for Carrizo*, the Registration Statement provides values for non-GAAP  financial metrics such as (1) Adjusted EBITDAX and (2) Adjusted operating cash flow, but fails to provide: (i) the line items used to calculate the non-GAAP measures, or (ii) a reconciliation of these non-GAAP metrics to their most comparable GAAP measures, in direct violation of Regulation G and consequently Section 14(a). Registration Statement at 96.

29.     For the *Summary of Certain Carrizo Unaudited Prospective Financial and Operating Information* based on (1) New York Mercantile Exchange oil and gas strip pricing and (2) Wall Street consensus pricing, the Registration Statement provides values for the non-GAAP financial metric Adjusted EBITDA but fails to provide: (i) the line items used to calculate the non-GAAP measure, or (ii) a reconciliation of the non-GAAP metric to its most comparable GAAP measure, in direct violation of Regulation G and consequently Section 14(a). Registration Statement at 99.

30.     For the *Carrizo Management Projections for Callon*, the Registration Statement provides values for the non-GAAP financial metric Adjusted EBITDA but fails to provide: (i) the line items used to calculate the non-GAAP measure, or (ii) a reconciliation of the non-GAAP metric to its most comparable GAAP measure, in direct violation of Regulation G and consequently Section 14(a). Registration Statement at 101.

31.     When a company discloses non-GAAP financial measures in a registration statement that were relied on by a board of directors to recommend that stockholders exercise their corporate suffrage rights in a particular manner, the company must, pursuant to SEC regulatory mandates, also disclose all projections and information necessary to make the non-GAAP measures not misleading, and must provide a reconciliation (by schedule or other clearly understandable method) of the differences between the non-GAAP financial measure disclosed or released with the most comparable financial measure or measures calculated and presented in accordance with GAAP. 17 C.F.R. § 244.100.

32.     The SEC has noted that:

> companies should be aware that this measure does not have a uniform definition and its title does not describe how it is calculated. Accordingly, a clear description of how this measure is calculated, as well as the necessary reconciliation, should accompany the measure where it is used. Companies should also avoid inappropriate or potentially misleading inferences about its usefulness. For example, 'free cash flow' should not be used in a manner that inappropriately implies that the measure represents the residual cash flow available for discretionary expenditures, since many companies have mandatory debt service requirements or other non-discretionary expenditures that are not deducted from the measure.[1]

---

[1] U.S. Securities and Exchange Commission, Non-GAAP Financial Measures, last updated April 4, 2018, available at: https://www.sec.gov/divisions/corpfin/guidance/nongaapinterp.htm.

33.     Thus, to cure the materially misleading nature of the forecasts under SEC Rule 14a-9 as a result of the omitted information in the Registration Statement, Defendants must provide a reconciliation table of the non-GAAP measures to the most comparable GAAP measures. At the very least, the Company must disclose the line item forecasts for the financial metrics that were used to calculate the aforementioned non-GAAP measures.  Such forecasts are necessary to make the non-GAAP forecasts included in the Registration Statement not misleading.

34.     With respect to J.P. Morgan's *Net Asset Value Analysis* for the purpose of determining an implied equity value per share for Callon and Carrizo common stock, the Registration Statement fails to disclose: (i) the unlevered free cash flows that Callon is expected to generate from March 31, 2019 onward; (ii) the unlevered free cash flows that Carrizo is expected to generate from March 31, 2019 onward; (iii) the inputs and assumptions underlying the discount rates ranging from 10.00% to 12.00%; (iv) Callon's hedges, other corporate and operating expenses, projected general and administrative expenses, projected cash taxes adjusted for utilization of Callon's net operating losses, asset retirement obligations, current operating working capital, and net debt as of March 31, 2019; and (v) Carrizo's hedges, other corporate and operating expenses, projected general and administrative expenses, projected cash taxes adjusted for utilization of Carrizo's net operating losses, asset retirement obligations, current operating working capital, and net debt as of March 31, 2019. Registration Statement at 108.

35.     With respect to J.P. Morgan's *Intrinsic Value Creation Analysis* for Carrizo, the Registration Statement fails to disclose: (i) the estimated transaction fees and expenses relating to the Proposed Transaction; and (ii) the estimated value leakage from limitations on pro forma net operating losses. Registration Statement at 109.

36.     With respect to RBC's *Net Asset Value Analysis* for Carrizo, the Registration Statement fails to disclose: (i) the projected cash flows; and (ii) inputs and assumptions underlying the discount rates ranging from 9.5% to 11.5%. Registration Statement at 115-16.

37.     With respect to RBC's *Discounted Cash Flow Analysis* for Carrizo, the Registration Statement fails to disclose: (i) terminal value at the end of the forecast period (2023E) and the inputs and assumptions underlying the use of the terminal multiples ranging from 3.0x to 4.0x estimated calendar year 2023 Adjusted EBITDA; (ii) the inputs and assumptions underlying the discount rates ranging from 9.5% to 11.5%; and (iii) the net debt and number of outstanding diluted shares as of March 31, 2019.  Registration Statement at 116.

38.     With respect to RBC's *Net Asset Value Analysis* for Callon, the Registration Statement fails to disclose: (i) the projected cash flows; and (ii) inputs and assumptions underlying the discount rates ranging from 9.0% to 11.0%. Registration Statement at 117.

39.     With respect to RBC's *Discounted Cash Flow Analysis* for Callon, the Registration Statement fails to disclose: (i) terminal value at the end of the forecast period (2023E) and the inputs and assumptions underlying the use of the terminal multiples ranging from 3.75x to 4.75x estimated calendar year 2023 Adjusted EBITDA; (ii) the inputs and assumptions underlying the discount rates ranging from 9.0% to 11.0%; and (iii) the net debt and number of outstanding diluted shares as of March 31, 2019.  Registration Statement at 118.

40.     With respect to Lazard's *Net Asset Value Analysis* for Carrizo, the Registration Statement fails to disclose: (i) the unlevered free cash flows Carrizo was projected to generate for fiscal year 2019 through fiscal year 2023 under each of the commodity pricing scenarios; (ii) the inputs and assumptions underlying the discount rates ranging from 8.6% to 11.8%; and (iii) the

present value of non-drilling and completion capital expenditures and corporate adjustments. Registration Statement at 125.

41.     With respect to Lazard's *Net Asset Value Analysis* for Callon, the Registration Statement fails to disclose: (i) the unlevered free cash flows Callon was projected to generate for fiscal year 2019 through fiscal year 2023 under each of the commodity pricing scenarios; (ii) the inputs and assumptions underlying the discount rates ranging from 7.6% to 12.2%; and (iii) the present value of non-drilling and completion capital expenditures and corporate adjustments (including federal and state taxes, general and administrative expenses, changes in net working capital, hedging expenses, and certain balance sheet items). Registration Statement at 126.

42.     In sum, the omission of the above-referenced information renders statements in the Registration Statement materially incomplete and misleading in contravention of the Exchange Act.  Absent disclosure of the foregoing material information prior to the special stockholder meeting to vote on the Proposed Transaction, Plaintiff will be unable to make a fully-informed decision regarding whether to vote in favor of the Proposed Transaction, and she is thus threatened with irreparable harm, warranting the injunctive relief sought herein.

## CLAIMS FOR RELIEF

### COUNT I

**On Behalf of Plaintiff Against All Defendants for Violations of
Section 14(a) of the Exchange Act and Rule 14a-9 and 17 C.F.R. § 244.100**

43.     Plaintiff incorporates each and every allegation set forth above as if fully set forth herein.

44.     Rule 14a-9, promulgated by the SEC pursuant to Section 14(a) of the Exchange Act, provides that proxy communications with stockholders shall not contain "any statement which, at the time and in the light of the circumstances under which it is made, is false or

misleading with respect to any material fact, or which omits to state any material fact necessary in order to make the statements therein not false or misleading." 17 C.F.R. § 240.14a-9.

45.     Defendants have issued the Registration Statement with the intention of soliciting stockholder support for the Proposed Transaction.   Each of the Defendants reviewed and authorized the dissemination of the Registration Statement and the use of their name in the Registration Statement, which fails to provide critical information regarding, among other things, the financial projections that were prepared by the Company and relied upon by the Board in recommending the Company's stockholders vote in favor of the Proposed Transaction.

46.     In so doing, Defendants made untrue statements of fact and/or omitted material facts necessary to make the statements made not misleading.  Each of the Individual Defendants, by virtue of their roles as officers and/or directors, were aware of the omitted information but failed to disclose such information, in violation of Section 14(a).  The Individual Defendants were therefore negligent, as they had reasonable grounds to believe material facts existed that were misstated or omitted from the Registration Statement, but nonetheless failed to obtain and disclose such information to stockholders although they could have done so without extraordinary effort.

47.     Defendants were, at the very least, negligent in preparing and reviewing the Registration Statement.  The preparation of a Registration Statement by corporate insiders containing materially false or misleading statements or omitting a material fact constitutes negligence.  Defendants were negligent in choosing to omit material information from the Registration Statement or failing to notice the material omissions in the Registration Statement upon reviewing it, which they were required to do carefully.  Indeed, Defendants were intricately involved in the process leading up to the signing of the Merger Agreement and the preparation and review of strategic alternatives and the Company's financial projections.

48.     The misrepresentations and omissions in the Registration Statement are material to Plaintiff, who will be deprived of her right to cast an informed vote if such misrepresentations and omissions are not corrected prior to the vote on the Proposed Transaction.  Plaintiff has no adequate remedy at law.  Only through the exercise of this Court's equitable powers can Plaintiff be fully protected from the immediate and irreparable injury that Defendants' actions threaten to inflict.

## COUNT II

**On Behalf of Plaintiff Against the Individual Defendants for Violations of Section 20(a) of the Exchange Act**

49.     Plaintiff incorporates each and every allegation set forth above as if fully set forth herein.

50.     The Individual Defendants acted as controlling persons of Carrizo within the meaning of Section 20(a) of the Exchange Act as alleged herein.  By virtue of their positions as directors of Carrizo, and participation in and/or awareness of the Company's operations and/or intimate knowledge of the incomplete and misleading statements contained in the Registration Statement filed with the SEC, they had the power to influence and control and did influence and control, directly or indirectly, the decision making of Carrizo, including the content and dissemination of the various statements that Plaintiff contends are materially incomplete and misleading.

51.     Each of the Individual Defendants was provided with or had unlimited access to copies of the Registration Statement and other statements alleged by Plaintiff to be misleading prior to and/or shortly after these statements were issued and had the ability to prevent the issuance of the statements or cause the statements to be corrected.

52.     In particular, each of the Individual Defendants had direct and supervisory involvement in the day-to-day operations of Carrizo, and, therefore, is presumed to have had the

power to control or influence the particular transactions giving rise to the Exchange Act violations alleged herein, and exercised the same. The omitted information identified above was reviewed by the Board prior to voting on the Proposed Transaction. The Registration Statement at issue contains the unanimous recommendation of the Board to approve the Proposed Transaction. The Individual Defendants were thus directly involved in the making of the Registration Statement.

53.     In addition, as the Registration Statement sets forth at length, and as described herein, the Individual Defendants were involved in negotiating, reviewing, and approving the Merger Agreement. The Registration Statement purports to describe the various issues and information that the Individual Defendants reviewed and considered. The Individual Defendants participated in drafting and/or gave their input on the content of those descriptions.

54.     By virtue of the foregoing, the Individual Defendants have violated Section 20(a) of the Exchange Act.

55.     As set forth above, the Individual Defendants had the ability to exercise control over and did control a person or persons who have each violated Section 14(a) and Rule 14a-9, by their acts and omissions as alleged herein. By virtue of their positions as controlling persons, these defendants are liable pursuant to Section 20(a) of the Exchange Act. As a direct and proximate result of Individual Defendants' conduct, Plaintiff will be irreparably harmed.

56.     Plaintiff has no adequate remedy at law. Only through the exercise of this Court's equitable powers can Plaintiff be fully protected from the immediate and irreparable injury that Defendants' actions threaten to inflict.

## RELIEF REQUESTED

WHEREFORE, Plaintiff demands injunctive relief in her favor and against the Defendants jointly and severally, as follows:

A.      Preliminarily and permanently enjoining Defendants and their counsel, agents, employees and all persons acting under, in concert with, or for them, from proceeding with, consummating, or closing the Proposed Transaction, unless and until Defendants disclose the material information identified above which has been omitted from the Registration Statement;

B.      Rescinding, to the extent already implemented, the Merger Agreement or any of the terms thereof, or granting Plaintiff rescissory damages;

C.      Directing the Defendants to account to Plaintiff for all damages suffered as a result of their wrongdoing;

D.      Awarding Plaintiff the costs and disbursements of this action, including reasonable attorneys' and expert fees and expenses; and

E.      Granting such other and further equitable relief as this Court may deem just and proper.

## JURY DEMAND

Plaintiff demands a trial by jury.

Dated: August 28, 2019                     **RIGRODSKY & LONG, P.A.**

                                                                By:  */s/ Gina M. Serra*
                                                                        Brian D. Long (#4347)
**OF COUNSEL:**                          Gina M. Serra (#5387)
                                                                        300 Delaware Avenue, Suite 1220
**WOLF HALDENSTEIN ADLER**    Wilmington, DE 19801
**FREEMAN & HERZ LLP**             Telephone: (302) 295-5310
Gloria Kui Melwani                          Facsimile: (302) 654-7530
270 Madison Avenue                        Email: bdl@rl-legal.com
New York, NY 10016                        Email: gms@rl-legal.com
Telephone: (212) 545-4600
Facsimile: (212) 686-0114
Email: melwani@whafh.com            *Attorneys for Plaintiff*